******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSEPH V.*
(AC 42295)

Keller, Bright and Flynn, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the first degree, risk of injury
to a child and conspiracy to commit risk of injury to a child in connection
with his abuse of the minor victim, the defendant appealed. He claimed,
inter alia, that the trial court improperly sanctioned a nonunanimous
jury verdict against him when it denied his motion for a bill of particulars
and his request that the court give the jury a specific unanimity instruc-
tion as to the sexual assault charge. The defendant and the victim were
first cousins. The defendant and T, who also were first cousins, had
had an ongoing sexual relationship since childhood. After T and the
victim's father moved to a new residence when the victim was seven
years old, the defendant began to sexually abuse the victim there when
the victim stayed overnight during visits with his father. The defendant's
sexual abuse of the victim lasted until the victim was ten years old and
involved the victim's performing oral sex on the defendant and the
defendant's anal penetration of the victim. During that period of time,
the defendant and T often sexually abused the victim together. The
victim testified that the first incident of sexual abuse occurred after he
saw the defendant and T exchange a "look." The state's information
alleged that the defendant had engaged in sexual intercourse with the
victim through fellatio and anal intercourse in violation of subdivision
(2) of the statutory (§ 53a-70 (a)) subsection proscribing sexual assault
in the first degree. The information also alleged that the defendant
violated subdivision (2) of the statutory (§ 53-21 (a)) subsection proscrib-
ing risk of injury to a child, in that he had contact with the victim's
intimate parts and subjected the victim to contact with his intimate parts.
The conspiracy count alleged that the defendant and T had conspired
to commit risk of injury to a child in the manner alleged in the risk of
injury count. The defendant filed a motion for a bill of particulars prior
to trial, claiming that the information was duplicitous in that it contained
allegations that could have been stated as separate offenses and gave
rise to a risk that he would not be afforded a unanimous verdict because
different jurors could reach a guilty verdict on the same count on the
basis of findings as to different incidents of abuse. The trial court con-
cluded, inter alia, that the information was not duplicitous and that the
jury was not required to unanimously agree that the defendant had
engaged in a specific act among different acts that would give rise to
criminal liability. The court thereafter denied the defendant's request
for a specific unanimity instruction as to the crime of sexual assault in
the first degree, reasoning that the jury did not have to agree unanimously
as to whether the sexual intercourse consisted of fellatio or anal inter-
course. The court instructed the jury that, to find the defendant guilty
of each offense, it must unanimously agree that the state proved each
essential element of the charged offense beyond a reasonable doubt
and that, if it were unable to do so, it must find him not guilty. The
court also denied the defendant's motion to preclude evidence that he
had had an ongoing sexual relationship with T from childhood through
the time of the sexual assaults of the victim. *Held*:

1. The defendant could not prevail on his claim that the trial court sanctioned
a nonunanimous verdict when it denied his motion for a bill of particulars
and his request for a specific unanimity instruction as to the charge of
sexual assault in the first degree: the court properly instructed the jury
with respect to the charge of sexual assault in the first degree, as § 53a-
70 (a) (2) proscribed a single type of conduct, sexual intercourse, which
can be proven by different types of specific acts, including fellatio and
anal intercourse, and, although the risk of injury and conspiracy counts
potentially were premised on the violation of alternative statutory subdi-
visions and, thus, gave rise to a risk that the jurors were not unanimous
with respect to the alternative bases of criminal liability, it was of no
consequence that the defendant was charged with having engaged in

those acts at different times and in distinct scenarios, as the state presented evidence of both types of violations of § 53-21 (a) in that the defendant had contact with the victim's intimate parts and subjected the victim to contact with the defendant's intimate parts; moreover, although the information was duplicitous as to the risk of injury and conspiracy counts, a specific unanimity instruction was not required with respect to those counts, as the court's instructions did not expressly sanction a nonunanimous verdict, and the court provided general unanimity instructions to the jury as well as unanimity instructions in the context of the instructions pertaining to those counts.

2. The trial court did not abuse its discretion when it admitted evidence that the defendant and T had had a sexual relationship since childhood: the long-term sexual relationship between the defendant and T was relevant to the jury's assessment of T's credibility, it was probative, circumstantial evidence that the defendant and T had intended to conspire to engage in conduct constituting the crime of risk of injury to a child and that their sexual activities with the victim were overt acts in furtherance of the conspiracy, the evidence was relevant to whether the defendant and T could have discussed matters of a sexual nature, whether they were likely to trust one another to conspire to commit a crime of a sexual nature against a child, and the evidence made it more likely that the "look" the defendant and T shared before they sexually abused the victim together for the first time was evidence that they had agreed to sexually abuse the victim and engaged in conduct in furtherance of the conspiracy; moreover, the court minimized the risk of prejudice by limiting T's testimony about his sexual relationship with the defendant and expressed its readiness to provide the jury with a limiting instruction, which the defendant requested not be delivered, and the graphic evidence of the sexual activities the defendant and T engaged in with the victim undermined the possibility that the limited evidence of the sexual relationship between the defendant and T unduly aroused the jurors' emotions; furthermore, the evidence, which was not of a violent or sexually graphic nature, was not introduced as or characterized as prior misconduct by the defendant or evidence of his propensity to sexually abuse the victim, and, contrary to the defendant's assertion, the trial court never suggested that the sexual relationship between the defendant and T was a basis from which to infer that they were motivated to engage in sexual conduct with children, as the jury reasonably may have inferred that the relationship between the defendant and T began as sexual exploration between young children, and the potential that the fact that the defendant and T were first cousins could arouse negative emotions in the jurors was not so significant that it outweighed the probative value of the evidence of their sexual relationship.

Argued October 9, 2019—officially released March 31, 2020

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, risk of injury to a child and conspiracy to commit risk of injury to a child, brought to the Superior Court in the judicial district of Waterbury, where the court, *K. Murphy, J.*, denied the defendant's motions for a bill of particulars and to preclude certain evidence; thereafter, the matter was tried to the jury; verdict and judgment of guilty, from which the defendant appealed. *Affirmed.*

*Megan L. Wade*, assigned counsel, with whom were *James P. Sexton*, assigned counsel, and, on the brief, *Matthew C. Eagen*, assigned counsel, and *Emily L. Graner Sexton*, assigned counsel, for the appellant (defendant).

*Jennifer F. Miller*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Amy L. Sedensky* and *Don E. Therkildsen, Jr.*,

senior assistant state's attorneys, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Joseph V., appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and conspiracy to commit risk of injury to a child in violation of General Statutes §§ 53a-48 (a) and 53-21 (a) (2).[1] The defendant claims that the trial court improperly (1) sanctioned a nonunanimous verdict and (2) denied his motion to preclude evidence that he was engaged in a sexual relationship with his coconspirator, T. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The male victim has a half brother, T, and a first cousin, the defendant. T and the defendant, who are first cousins, were born two days apart. The victim is more than eight and one-half years younger than T and the defendant.

When the victim was four or five years of age, T began frequently abusing the victim in a sexual manner.[2] This included T's taking advantage of moments alone with the victim to engage in a variety of sexual acts that included rubbing his penis between the victim's legs, causing the victim to touch his penis, performing oral sex on the victim, and causing the victim to perform oral sex on him. Later, T anally penetrated the victim with his penis.

Prior to 2006, the victim lived with his mother, father, and T In 2006, when the victim was approximately seven years of age, the victim's mother and father ended their relationship and decided to live separately. The victim's father moved to a new residence. T, at that time a sophomore in high school, lived at the new residence with his father. T had his own bedroom at the residence, as did his father. The victim, who continued to reside with his mother, frequently visited his father and stayed at the new residence for overnight visits. The victim, however, did not have his own bedroom at the new residence but slept on a sofa or in his father's bedroom. The defendant lived at the new residence for a period of time, but he did not have his own bedroom and slept on a downstairs sofa. T's abuse of the victim continued at the new residence.

Both prior to and following the time that the victim's father and T moved to the new residence, the defendant had a close relationship with T. The defendant and T spent a lot of time together while engaging in activities such as playing baseball, basketball, and video games. From a young age, the defendant and T had an ongoing sexual relationship, as well. After the victim's father and T moved to the new residence, when the defendant was fifteen years of age, the defendant began to sexually

assault the victim. Frequent sexual abuse of the victim by the defendant, which often involved simultaneous sexual abuse of the victim by T, occurred until the victim was ten years of age.[3]

The first time that the defendant sexually abused the victim occurred in T's bedroom after the defendant, T, and the victim had been playing video games. After the gaming system was turned off, the victim was on T's bed. The defendant and T exchanged a knowing glance just before the defendant put his hand on the victim's hand and made the victim stroke his penis.[4] Thereafter, T and the defendant took turns rubbing their penises between the victim's legs, near his buttocks. At one point during this incident, T attempted to anally penetrate the victim with his penis while the defendant made the victim perform oral sex on him.

Another incident involving the defendant occurred when he and the victim were watching television in the bedroom of the victim's father. While the defendant and the victim were lying in bed, the defendant took the victim's hand and made the victim stroke his penis. Then, the defendant made the victim, who was fully clothed, perform oral sex on him. When the defendant heard someone approaching the bedroom, he quickly closed his pants to avoid detection by another person.

The defendant sexually abused the victim during another incident that occurred in T's presence, although T did not participate.[5] This incident occurred at night, after the victim, the defendant, and T had been watching television in the living room, which was downstairs at the residence of the victim's father. The defendant partially undressed himself and partially undressed the victim before making the victim perform oral sex on him. The defendant also rubbed his penis between the victim's legs. The defendant quickly stopped his sexual activity when he heard the victim's father, who was on the second floor of the residence, walking toward the staircase that led to the living room.

In another incident involving the defendant, which occurred when the victim was ten years of age, the defendant and the victim were alone together at the residence of the victim's father after other family members had left to purchase food. The defendant, who was on the couch in the living room with the victim, partially removed his pants and the victim's pants and anally penetrated the victim with his penis. Thereafter, the defendant made the victim perform oral sex on him. When the defendant completed the assault, he closed his pants and instructed the victim not to tell the victim's father what had occurred.

Between the ages of ten and thirteen, the victim came to recognize that the sexual contact had been wrong, and he was left with many unanswered questions about what had occurred between him, T, and the defendant.

The victim, however, did not yet feel comfortable telling anyone close to him about what had occurred. He first revealed the sexual abuse to a third party in 2013, when he was thirteen years of age. The victim visited a website that was operated by The Trevor Project, which, as testified to by its vice president of programs, is a California based "accredited, national suicide prevention and crisis intervention organization for lesbian, gay, bisexual, transgender and questioning youth."[6] The victim sent a digital correspondence to the organization in which, among other things, he revealed that he had been sexually abused from a young age by his brother and his cousin, that he grappled with emotional issues, and that he sometimes thought about harming himself and about suicide. After he did not receive an immediate response, the victim visited the website once again and used an instant messaging feature to speak with a counselor. During the instant messaging conversation between the victim and the counselor, the victim reiterated that his brother and cousin had abused him sexually until he was ten years of age, stated that he previously had suicidal thoughts, and that he still had questions about what had occurred. At one point during the conversation, he questioned whether it was "[his] fault for letting it happen for all those years." The victim's goal in reaching out to the organization was to share his experiences with a third party who might be able to help him feel better, but he was afraid of the consequences of involving anyone who had the ability to take action against his abusers.

Unbeknownst to the victim, the counselor that he spoke with at The Trevor Project was required by law to report allegations of child sexual abuse to the California Department of Children and Family Services (department) in Los Angeles. After the counselor concluded his conversation with the victim, he reported the abuse to the department. The department contacted the police department for the Connecticut municipality in which the victim resided and provided information that led the police to the residence of the victim and his mother. Thus, within hours of the victim's instant messaging conversation with a counselor, police officers were at his residence to investigate the representations of sexual abuse, at which time the victim admitted that he had been sexually abused by the defendant and T. The arrests of the defendant and T followed.

I

First, the defendant claims that the court improperly sanctioned a nonunanimous jury verdict in violation of his constitutional right to a unanimous jury verdict.[7] We disagree.

The following additional facts are relevant to this claim. On November 2, 2015, during a prior trial related to the events underlying the charges of which the defendant stands convicted,[8] the state filed a substitute infor-

mation, which consisted of four counts, against the defendant.[9] On December 15, 2015, following a mistrial in the prior action and before the commencement of the present trial, the defendant filed a motion for a bill of particulars, as provided for in Practice Book § 41-20.[10] Essentially, the motion sought to compel the state to provide additional information with respect to each of the charges.[11] On September 2, 2016, before the court heard argument on the defendant's motion, the state filed a substitute information that was the operative information at the time of the present trial. This information consisted of three counts.[12]

On September 6, 2016, the defendant filed a memorandum of law in support of his motion for a bill of particulars. On September 14, 2016, the court heard argument on the motion. Consistent with the arguments set forth in the memorandum of law, defense counsel, relying primarily on *State* v. *Saraceno*, 15 Conn. App. 222, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431 (1988), argued that the state's information, which contained "several allegations that could have been stated as separate offenses," was duplicitous in light of the policy considerations set forth in *Saraceno*.[13] Defense counsel argued that the information gave rise to a "grave concern" that, in light of the anticipated evidence to be presented at trial, the jury might arrive at a finding of guilt with respect to one or more counts without having agreed on specific conduct or facts as to each count.

Defense counsel, referring to the evidence presented during the prior trial, observed that, on the one hand, the state was expected to present testimony that the defendant had engaged in sexual activities with the victim during three or four separate incidents. On the other hand, the victim was expected to testify that countless other incidents of abuse occurred in which the defendant engaged in such criminal acts but that he was unable to describe these incidents in any detail. Defense counsel argued that the state, in its substitute information, provided few details concerning the manner in which the defendant committed the crimes alleged. Thus, defense counsel argued, there was a risk that one or more jurors could reach a guilty verdict with respect to a count on the basis of their findings with respect to an incident of abuse proven by the state, and one or more jurors could reach a guilty verdict on the same count, but on the basis of their findings with respect to a *different* incident of abuse proven by the state. Defense counsel stated: "That is our concern here, that [the defendant would] not be afforded a unanimous verdict because the jurors would not agree as to *a particular factual basis* for each and every count . . . ." (Emphasis added.)

Defense counsel stated that, if the court denied the motion for a bill of particulars, the defense would

request that the court remedy the risk of a nonunanimous verdict by providing a specific unanimity instruction to the jury "to ensure that the jurors are unanimous as to what specific conduct occurred [with respect to each] count." Defense counsel argued that the request for a specific unanimity instruction was being made pursuant to *State* v. *Famiglietti*, 219 Conn. 605, 595 A.2d 306 (1991). Defense counsel clarified that she did not take issue with the fact that, in the information, the state was relying on the fact that the alleged criminal conduct occurred on "diverse dates" but argued that the state needed to provide a bill of particulars to be more succinct in terms of the "actual underlying conduct" that formed the basis of each charge.

The prosecutor argued that the information was legally sufficient. Relying on the theory of defense raised during the prior trial, the prosecutor argued that the defense was expected to argue that the state had not proven *any* allegation of sexual assault by the defendant because the victim was not credible. The prosecutor, relying on case law, argued that because the theory of defense "turns 100 percent on the credibility of the [victim], the concern [about unanimity] that [defense] counsel has does not exist."

The court, in denying the motion, stated that the information was not duplicitous simply because it was based on several criminal acts that could have been stated as separate offenses. Additionally, the court stated that it had considered the five policy implications discussed in *Saraceno*; see footnote 13 of this opinion; and concluded that they did not warrant the giving of a specific unanimity instruction in the present case. With respect to the policy implication on which the defendant most heavily relied, jury unanimity, the court explained that, contrary to the arguments advanced by defense counsel, the law did not require the jury to unanimously agree that the defendant had engaged in conduct that violated the statutes at issue on a specific date or by engaging in a specific act among different acts that would give rise to criminal liability. Instead, the court stated, that, before returning a finding of guilt, the jury was required to unanimously agree that the defendant had engaged in the type of conduct that was proscribed by the statutes during the time frame alleged. The court stated that, for example, if the state bore the burden of proving that an act was committed in furtherance of the conspiracy count, it was not necessary for the jury to agree unanimously with respect to a particular act. Similarly, if the state bore the burden of proving that sexual intercourse occurred, it was not necessary for the jury to agree unanimously with respect to whether sexual intercourse consisted of fellatio or anal intercourse. The court also stated that "the issue in this case is going to be whether the main witness, [the victim], is telling the truth. So, this is not a situation where the defendant is going to take the

[witness] stand and say, well, yeah, I did X, which might constitute a crime, but I didn't do Y. Sometimes, that does happen, but in this case, the defense, in the last trial, and what I assume will be the defense in this trial, is that he didn't do it at all, didn't touch [the victim] in a sexual way. And [the victim's] position is, he did. It's really going to come down to whether the jury believes [the victim] or does not. So, with that in mind, there really isn't an issue regarding unanimity." The court, however, stated that it would consider requests for a specific unanimity instruction if either the state or the defendant believed such an instruction was required.

Thereafter, the defendant filed a request to charge that included a specific unanimity instruction for the crime of sexual assault in the first degree.[14] Although defense counsel's prior arguments concerning unanimity expressly encompassed all three counts of the state's substitute information, the defendant did not file a similar request for a specific unanimity instruction with respect to the other two counts, namely, risk of injury to a child and conspiracy to commit risk of injury to a child.

The court provided counsel with a copy of its proposed jury charge and, later, outside of the presence of the jury, held a charge conference. The court addressed the defendant's request that the court deliver a specific unanimity instruction with respect to the sexual assault count. The court, referring to relevant precedent,[15] stated that it was not inclined to deliver the proposed instruction. Reiterating the rationale that it had set forth previously, the court stated that, with respect to the sexual assault count, the jury had to agree unanimously that the defendant engaged in the statutorily prohibited conduct of sexual intercourse with the underage victim at the time and place alleged, but the jury did not have to agree unanimously with respect to the specific conduct that constituted sexual intercourse. Specifically, the court stated that the jury did not have to agree unanimously with respect to whether sexual intercourse consisted of fellatio or anal intercourse. The court reasoned that, in the present case, the charged offense was not premised on the defendant's having committed alternative types of statutorily prohibited conduct but on his commission of a single type of statutorily prohibited conduct, namely, sexual intercourse, regardless of the fact that sexual intercourse could be proven through the defendant's commission of different proscribed actions. Defense counsel asked the court for additional time to respond to its ruling, and the court consented to that request.

The following day, outside the presence of the jury, defense counsel revisited the request for a specific unanimity instruction. Defense counsel broadened her argument by expressly linking the request to the arguments advanced in support of her motion for a bill of

particulars and emphasizing that the defendant sought a specific unanimity instruction that pertained to all *three counts* of the substitute information. In relevant part, defense counsel stated: "[B]ecause we made the argument for . . . specificity with the bill of particulars, we would also want to be consistent in asking for a separate unanimity [instruction] in keeping with the argument that was made for the bill of particulars, in that it is the defense contention that there's a fear that there could be a conviction on one of [the] . . . *three charges*, and yet the factual underpinnings that are agreed upon by the jurors would not be the same." (Emphasis added.) Defense counsel attempted to distinguish the present case from those cases in which defense counsel, for the first time on appeal, raised a claim related to a trial court's failure to deliver a specific unanimity instruction. As defense counsel observed, and the court agreed, in the present case, defense counsel both moved for a bill of particulars and requested a specific unanimity instruction.

The court did not deliver the specific unanimity instruction requested by defense counsel. Prior to delivering to the jury instructions concerning each of the three offenses with which the defendant was charged, the court instructed the jury that it must consider each count separately and return a separate, unanimous verdict for each count.[16] In the context of its detailed instructions with respect to each of the three counts, the court also instructed the jury that, to find the defendant guilty of each offense, it must unanimously agree that the state proved each essential element of the offense beyond a reasonable doubt and that, if it is unable to do so, it must find the defendant not guilty.[17] At the conclusion of the court's charge, defense counsel took an exception to the court's failure to deliver a specific intent instruction, as had been requested earlier that day.

In arguing before this court that the trial court sanctioned a nonunanimous verdict, the defendant reiterates many of the arguments that he advanced before the trial court. His appellate argument consists of two legal arguments that are inherently intertwined. First, he argues that the state relied on a duplicitous information and that the court erroneously denied his request for a bill of particulars. In relevant part, he argues: "[T]he jury was presented with evidence of four incidents, any of which could have served as the basis for a conviction of sexual assault and risk of injury [as] presented to [it] in the state's information. Additionally, the jurors were presented, through the testimony of [T] with multiple possibilities of conspiracy. Defense counsel requested, first, a bill of particulars that would have more clearly delineated the criminal conduct [that] the state sought to prove, and then, after the close of evidence, a jury charge to ensure that the jury understood [that] it needed to be unanimous as to the specific

conduct that formed the basis of the criminal charge. Both requests were denied by the trial court . . . . Because multiple allegations were combined into a single count of the information, and because the facts of this case implicate the policy considerations behind the prohibition against duplicitous charging documents, the jury may not have been unanimous as to any one count of the crimes charged." (Citation omitted.) See footnote 13 of this opinion.

Second, the defendant argues that he took steps to lessen the risk of a nonunanimous verdict by requesting that a specific unanimity instruction be given to the jury. The defendant suggests that, after the court denied his motion for a bill of particulars, the court erred in failing to deliver a specific unanimity instruction. This error, the defendant argues, tainted the conviction of all three offenses, as he advanced a concern at trial "that the jury would convict the defendant of a charge, but that it would not be unanimous in the factual underpinnings of such a charge." The defendant argues that the court "created a significant possibility that the jury convicted [him] without being unanimous as to the criminal conduct that served as the basis for the convictions." Specifically addressing the sexual assault count, the defendant argues that "[t]he problems created by the state's duplicitous information were exacerbated by the trial court's jury instructions. In its jury charge, the trial court instructed that, 'in order to convict the defendant [of sexual assault in the first degree], you must be unanimous that at least one violation of this statute by one of the methods alleged occurred between the defendant and [the victim] during the time frame indicated.' . . . [T]he plain meaning of the trial court's words made clear that the jury must agree that at least one violation of the statute occurred, but not necessarily the same one. Indeed, the trial court made clear to both parties that it did not believe that the jury had to be unanimous as to *which* criminal act occurred, [as] long as they were unanimous that *a* criminal act occurred." (Citation omitted; emphasis in original.) The defendant reiterates that it was imperative that the jury unanimously agree with respect to the manner in which he committed prohibited acts, not merely that he had engaged in one or more acts prohibited by the statute during the time frame alleged by the state. He argues: "In this case, the specific incidents the state focused on were separated by time and intervening events, but the jury instruction did not require the jury to agree upon the specific criminal conduct that took place in order to find the defendant guilty."

We observe that "[t]he denial of a motion for a bill of particulars is within the sound discretion of the trial court and will be overturned only upon a clear showing of prejudice to the defendant. . . . A defendant can gain nothing from [the claim that the pleadings are insufficient] without showing that he was in fact preju-

diced in his defense on the merits and that substantial injustice was done to him because of the language of the information." (Internal quotation marks omitted.) *State* v. *Joseph B.*, 187 Conn. App. 106, 117, 201 A.3d 1108, cert. denied, 331 Conn. 908, 202 A.3d 1023 (2019); see also *State* v. *Caballero*, 172 Conn. App. 556, 564, 160 A.3d 1103 (whether to grant a "motion for a bill of particulars is addressed to the sound discretion of the trial court" (internal quotation marks omitted)), cert. denied, 326 Conn. 903, 162 A.3d 725 (2017).

As our previous discussion of what transpired at trial reflects, the defendant's arguments with respect to the motion for a bill of particulars were based on the belief that, unless the state more specifically tailored the counts in the information to allege the exact nature of the prohibited acts constituting the crimes charged, the risk of the jury's returning a nonunanimous verdict existed. The defendant argued that it was necessary for the court to take steps to ensure that individual jurors unanimously agreed on the manner in which prohibited acts were committed in light of the fact that the state might rely on multiple factual allegations for each count. The defendant's arguments in support of the motion were of constitutional dimension. Thus, despite the fact that whether to grant a motion for a bill of particulars is left to the sound discretion of the trial court, we recognize that the court's exercise of discretion must be evaluated on appeal in light of the underlying constitutional claim, that is, whether the information was duplicitous because it infringed on the defendant's constitutional right to a unanimous verdict. See *State* v. *Kemah*, 289 Conn. 411, 422, 957 A.2d 852 (2008) (reviewing court affords plenary review to questions of law).

"Duplicity occurs when two or more offenses are charged in a single count of the accusatory instrument. . . . It is now generally recognized that [a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is only duplicitous where the policy considerations underlying the doctrine are implicated. . . . These [considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." (Citations omitted; internal quotation marks omitted.) *State* v. *Saraceno*, supra, 15 Conn. App. 228–29.

In the present case, counts one, two, and three of the state's substitute information of September 2, 2016, each alleged multiple commissions of the same

offense.[18] In count one, the state alleged that the defendant, "on or about diverse dates between August 23, 2006 and December 25, 2010," engaged in "sexual intercourse (fellatio and anal intercourse)" with the victim. In count two, the state alleged that, "on or about diverse dates between August 23, 2006, and December 25, 2010," the defendant had contact with the victim's intimate parts and subjected the victim to contact with his intimate parts. In count three, the state alleged that, "on or about diverse dates between August 23, 2006, and December 25, 2010," the defendant and T conspired to commit the crime of risk of injury to a child. As defense counsel anticipated in arguments on the motion for a bill of particulars, in light of the evidence presented during the prior trial, the state thereafter presented testimony in the present trial from the victim as well as T that multiple incidents of sexual abuse occurred during the time frames alleged.

We focus, as does the defendant, on the risk of a nonunanimous verdict. This court has addressed a claim of this nature in several prior decisions. For example, in *Saraceno*, the state's information contained counts, under which the defendant was convicted, that alleged multiple violations of the same offense.[19] *State* v. *Saraceno*, supra, 15 Conn. App. 228. The court determined, however, that the consideration related to the possible lack of unanimity did not render the information duplicitous. Id., 231. The court reasoned: "[W]ith regard to the evidence adduced in this case, it was not possible for the jury to return a verdict which was not unanimous. Given the complainant's age and her relative inability to recall with specificity the details of separate assaults, the jury was not presented with the type of detail laden evidence which would engender differences of opinion on fragments of her testimony. In other words, the bulk of the state's case rested on the credibility of the young complainant. When she testified, for example, that on many occasions the defendant forced her to engage in fellatio while in a motor vehicle parked on the banks of the Connecticut River, the jury was left, primarily, only with the decision of whether she should be believed. With such general testimony, the spectre of lack of unanimity cannot arise." Id., 230.

Presented with a similar claim of constitutional magnitude, this court, in *State* v. *Marcelino S.*, 118 Conn. App. 589, 595–97, 984 A.2d 1148 (2009), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010), followed the rationale of *Saraceno* and rejected a claim that a defendant, who was convicted of committing sexual offenses against a victim who was between approximately nine and eleven years of age, was prejudiced by a duplicitous information.[20] This court stated: "In the present case, [the victim] testified that the defendant touched her breasts, buttocks and vagina, over her clothes, on more than one occasion over a period of time. Of course, [t]he state has the duty to inform a defendant, within reasonable

limits, of the time when the offense charged was alleged to have been committed. The state does not have a duty, however, to disclose information which the state does not have. Neither the sixth amendment [to] the United States constitution nor article first, [§ 8, of] the Connecticut constitution requires that the state choose a particular moment as the time of an offense when the best information available to the state is imprecise. . . . [I]n a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited. The state can only provide what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse children impossible. To do so would have us establish, by judicial fiat, a class of crimes committable with impunity." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 596–97. The court rejected the argument that there was a danger that the members of the jury did not agree unanimously on the acts that constituted the basis for two offenses of which the defendant was convicted, reasoning that "the bulk of the state's case rested on the credibility of [the victim]; the primary decision for the jury was whether [the victim] should be believed." Id., 597.

Also, in *State* v. *Michael D.*, 153 Conn. App. 296, 322, 101 A.3d 298, cert. denied, 314 Conn. 951, 103 A.3d 978 (2014), this court considered a defendant's claim that the state's information was duplicitous because it posed the risk that the jury would not unanimously agree on the manner in which the offenses were committed.[21] The defendant argued that, "because the consolidated counts of the substituted information were premised on separate and distinct incidents, some jurors may have credited the victim's testimony as to one act, but not all, whereas other jurors may have credited her testimony as to other acts, thereby giving rise to concerns that the jury's verdict was not unanimous." Id., 325.

In *Michael D.*, this court, although it held that the information was duplicitous, rejected the argument that the information, considered in light of the evidence presented at trial, gave rise to a concern that the jury's verdict was not unanimous.[22] The court stated: "The record reflects that the question of the victim's credibility was front and center throughout the trial. The defendant took particular aim at the victim's testimony in closing argument, where he repeatedly suggested that she was not believable, and that she had manufactured her testimony. The defendant implored the jury to consider the question of his guilt, mindful that his fate ultimately came down to the victim's word . . . .

"As the defendant argued to the jury, the state's case rested on the victim's testimony. . . . He cannot now

argue, convincingly, that the jury reviewed his case and the evidence, and arrived at a verdict without unanimously agreeing on the factual basis for it. In a case such as this, the spectre of lack of unanimity cannot arise." (Citations omitted; internal quotation marks omitted.) Id., 325–26.

The state urges us to conclude that the circumstances at issue in the present case are similar to those in *Saraceno*, *Marcelino S.*, and *Michael D.*, and that this court likewise should conclude that the information was not duplicitous or that any duplicity did not create a risk of a nonunanimous verdict. The state argues: "The defendant did not present a particularized challenge to any of the individual incidents of sexual assault. Rather, he merely attempted to portray the victim as a troubled teenager whose testimony was riddled with inconsistencies. Therefore, because there is no indication that the jury would have credited some, but not all, of the victim's testimony, this case did not present a circumstance that created a risk of a nonunanimous verdict."

Beyond arguing that the facts of the present case are distinguishable from those at issue in cases such as *Saraceno*, *Marcelino S.*, and *Michael D.*, the defendant urges us to reject what he characterizes as "flawed" logic in *Saraceno*. The defendant argues that this court's all or nothing view of evaluating credibility, as reflected in *Saraceno* and its progeny, is at odds with the well settled principle that a fact finder properly may choose to credit all, part, or none of the testimony of any witness.[23] The defendant posits that, "[i]n this case, where [the victim] provided extensive testimony about the various alleged incidents that formed the basis of the charged conduct, it is not inconceivable that some jurors credited certain aspects of his testimony, while other jurors discredited those aspects and instead credited different aspects of [the victim's] testimony in arriving at the guilty verdicts."

Beyond questioning the rationale in *Saraceno* and its progeny, the defendant argues that the rationale, if legally sound, is inapplicable to the present case because, at trial, defense counsel cross-examined the victim with respect to the three specific incidents that he described in his testimony. Additionally, the defendant argues that the fact that the state presented some evidence concerning specific incidents of abuse in the present case, rather than simply generalized testimony that abuse had occurred several times, distinguishes the present case from cases such as *Saraceno*, in which the victim did not describe specific incidents of abuse but a general pattern of abuse.

Setting aside any doubts that we may share with the defendant concerning the "all or nothing" approach to credibility, as is set forth in *Saraceno* and as followed in cases that included *Marcelino S.* and *Michael D.*, we agree with the defendant that the rationale does not

neatly apply to the circumstances in the present case. As we have set forth previously, in the present case, the state presented generalized testimony from the victim that multiple instances of abuse involving the defendant had occurred.[24] The state, however, also presented evidence that four specific instances of abuse involving the defendant had occurred; the victim described three of the four specific instances and T described two of the four specific instances. Not surprisingly, because the state's case rested on the testimony of the victim and T, at trial, defense counsel vigorously attempted to demonstrate that neither the victim nor T were credible witnesses. As the defendant argues, at trial, defense counsel attempted to undermine the credibility of the victim and T not merely in general terms but with respect to their testimony concerning specific instances of abuse. It suffices to observe that, by the use of questioning *and* argument, defense counsel attempted to cast doubt on the ability of the victim and T to recall accurately the events at issue and whether they occurred in the manner described. In light of the foregoing, we are not persuaded that it is fair to characterize the situation as one in which the jury was presented with an all or nothing credibility assessment of a witness who allegedly was sexually abused as a child. The state presented testimony concerning, inter alia, four distinct incidents in which the defendant sexually abused the victim. It belies the manner in which we expect juries to carefully weigh the evidence to presume that the jury was *required* to find that, if the state had proven one or more factually distinct incidents of sexual abuse, then it was required to find that they all had been proven. Rather, it was within the jury's prerogative as the finder of fact to draw reasonable inferences from its finding that testimony concerning one or more of the incidents was credible. Certainly, the fact that the state's key witness was a child when the sexual abuse occurred did not immunize his testimony from the scrutiny that the jury was expected to apply to the testimony of all of the state's witnesses, and the court did not suggest otherwise. Thus, we do not conclude that the jury was left, primarily, only with the decision of whether the victim was credible generally. This conclusion, though, does not end our inquiry.

The dispositive consideration in our evaluation of whether the state's substitute information posed a risk that the jurors may not have been unanimous in their finding of guilt with respect to any one of the offenses with which the defendant was charged, thus requiring the court to deliver a specific unanimity instruction, comes down to whether the defendant's criminal liability for each offense was premised on his having violated one of multiple statutory subsections or elements.

In *State* v. *Benite*, 6 Conn. App. 667, 674–75, 507 A.2d 478 (1986), in considering of a claim that the trial court improperly failed to deliver a specific unanimity instruc-

tion, this court stated: "If the actions necessary to constitute a violation of one statute or subsection of a statute are distinct from those necessary to constitute a violation of another, then jurors who disagree on which one the state proves cannot be deemed to agree on the actus reus: the conduct the defendant committed. Where the evidence presented supports both alternatives, the possibility that the jurors may actually disagree on which alternative, if either, the defendant violated is the highest. Under such circumstances, the jurors should be told that they must unanimously agree on the same alternative. . . . [A specific unanimity instruction] is required only where a trial court charges a jury that the commission of any one of several alternative actions would subject a defendant to criminal liability, and those actions are conceptually distinct from each other, and the state has presented some evidence supporting each alternative. The determination of whether actions are conceptually distinct must be made with reference to the purpose behind the proposed charge: to ensure that the jurors are in unanimous agreement as to what conduct the defendant committed."

This court, in *Benite*, analyzed and relied heavily on *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977). See *State* v. *Benite*, supra, 6 Conn. App. 672–73. "In essence, the unanimity requirement as enunciated in *Gipson* and its progeny requires the jury to agree on the factual basis of the offense. The rationale underlying the requirement is that a jury cannot be deemed to be unanimous if it applies inconsistent factual conclusions to alternative theories of criminal liability." *State* v. *Bailey*, 209 Conn. 322, 334, 551 A.2d 1206 (1988).

This court has further explained the relevant principle: "The rule which we articulated in *Benite* is limited to a case in which the actions necessary to constitute a violation of one statute or subsection of a statute are distinct from those necessary to constitute a violation of another . . . . The word another as used in *Benite* obviously refers to another subsection of the same statute, or to another statutory way of committing a violation of the same statutory subsection. Thus, the *Benite* rule, which requires the trial court in appropriate circumstances to give, even in the absence of a proper request or exception, a fact-specific and closely focused unanimity instruction, only applies where the particular count under consideration by the jury is based on multiple factual allegations which amount to multiple statutory subsections or multiple statutory elements of the offense involved. It does not apply, and such an instruction is not required of the court, where the multiple factual allegations do not amount to multiple statutory subsections or to multiple statutory elements of the offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Mancinone*, 15 Conn. App. 251, 273–74, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132,

103 L. Ed. 2d 194 (1989); see also *State* v. *Douglas C.*, 195 Conn. App. 728, 754, A.3d (trial court "is not required . . . to provide a specific unanimity instruction when the state charges a defendant with having violated one statutory subsection one time and proffers evidence at trial that amounts to the defendant having violated that single statutory subsection on multiple occasions"), cert. granted on other grounds, 335 Conn. 904, A.3d (2020).

"This limitation on the *Benite* rule, moreover, comports with common sense and sound principles by which to view jury verdicts. In most criminal trials, the evidence will allow to one degree or another differing but reasonable views regarding what specific conduct the defendant engaged in which formed the basis of the jury's verdict of guilt. For example, different witnesses may present different versions of the defendant's conduct; and the same witness may testify inconsistently in his description of that conduct, and thus present differing versions of that conduct. In such cases, it is a familiar principle that the jury is free to accept or reject all or any part of the evidence. . . . In such cases, however, there is nothing in the constitutional requirement of jury unanimity that requires a specific instruction that the jury must be unanimous with regard to any one of those varying factual versions. As long as the jurors are properly instructed on the legal elements of the crime which must be proved beyond a reasonable doubt, they need not be further instructed that they must all agree that the exact same conduct constituted the prohibited act. In such cases, we safely rely on the presumption that the jury understands and properly follows the court's instruction that its verdict must be unanimous . . . and we do not attempt to divine whether that presumption is valid.

"Where, however, the jury is presented with alternative, conceptually distinct statutory subsections, or with alternative, conceptually distinct elements of the same statute, as possible bases for guilt, the principles of *Benite* come into play, because it is in those situations that the possibility that the jurors may actually disagree on which alternative, if either, the defendant violated is the highest. . . . In those situations, therefore, we require a specific unanimity instruction as an additional corollary to the usual unanimity instruction." (Citations omitted; internal quotation marks omitted.) *State* v. *Mancinone*, supra, 15 Conn. App. 275–76.

In *State* v. *Famiglietti*, supra, 219 Conn. 619–20, our Supreme Court clarified the analysis that a reviewing court should apply to a claim that a trial court violated a defendant's sixth amendment right to due process by failing to deliver a specific unanimity instruction. The analysis applies in the types of cases governed by *Benite* and its progeny, specifically, cases in which criminal liability may be premised on the violation of one of

several alternative subsections of a statute. Our Supreme Court explained in relevant part: "[W]e have not required a specific unanimity charge to be given in every case in which criminal liability may be premised on the violation of one of several alternative subsections of a statute. We have instead invoked a multipartite test to review a trial court's omission of such an instruction. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." Id.; see also *State* v. *Dyson*, 238 Conn. 784, 791–94, 680 A.2d 1306 (1996) (applying *Famiglietti* test); *State* v. *Anderson*, 211 Conn. 18, 34–35, 557 A.2d 917 (1989) (discussing principles codified in *Famiglietti* test); *State* v. *Bailey*, supra, 209 Conn. 334 (same).

Having set forth relevant principles of law, we turn to the charges at issue in the present case. With respect to sexual assault in the first degree in violation § 53a-70 (a) (2),[25] we observe that the court properly instructed the jury that the state bore the burden of proving beyond a reasonable doubt that (1) the defendant engaged in sexual intercourse with the victim, (2) the victim was younger than thirteen years of age at the time of the sexual intercourse, and (3) the defendant was more than two years older than the victim. The statutory subsection under which the defendant was charged was not comprised of conceptually distinct alternative methods for committing the offense. The single type of criminal conduct that is prohibited by § 53a-70 (a) (2) is sexual intercourse, which may be proven by different types of specific acts, including fellatio and anal intercourse. Thus, by its nature, this charge is not implicated by the rule in *Benite*. Contrary to the defendant's arguments, the claim that the sexual assault count was duplicitous and required the use of a specific intent instruction lacks merit. With respect to the sexual assault count, the defendant has not demonstrated that a risk of a nonunanimous verdict existed and, thus, that the court erred in denying the motion for a bill of particulars or in not delivering the specific unanimity instruction that he requested.

We next turn to the second count, in which the defendant was charged with risk of injury to a child in violation of § 53-21 (a) (2),[26] and the third count, in which the defendant was charged with conspiracy to commit risk of injury to a child in violation of §§ 53a-48 (a) and 53-21 (a) (2).[27] With respect to the risk of injury charge, the court properly instructed the jury that the state bore

the burden of proving beyond a reasonable doubt that (1) the defendant had contact with the victim's intimate parts *or* subjected the victim to contact with his intimate parts, (2) the contact with intimate parts took place in a sexual and indecent manner, (3) the contact was likely to injure or weaken the health or morals of the victim, and (4) the victim was younger than sixteen years of age. Unlike the statutory subsection underlying count one, the statutory subsection that formed the basis of count two prohibited two types of conduct, namely, the defendant's making contact with the victim's intimate parts and, in the alternative, the defendant's subjecting the victim to contact with his intimate parts. With respect to the conspiracy to commit risk of injury charge, the court properly instructed the jury that the state bore the burden of proving beyond a reasonable doubt that the defendant (1) agreed with one or more persons to engage in conduct constituting the crime of risk of injury to a child, (2) at least one of the coconspirators committed an overt act in furtherance of the conspiracy, and (3) the defendant specifically intended that every element of the planned offense be committed. Because, as alleged in the present case, the charge of risk of injury to a child could have been based on alternative types of statutorily prohibited conduct, the conspiracy count likewise rested on alternative bases of criminal liability. Moreover, as our recitation of the facts reflects, the state presented evidence of both types of violations of the risk of injury statute. The state presented evidence that, in a statutorily prohibited manner, the defendant had contact with the victim's intimate parts and that the defendant subjected the victim to contact with his intimate parts. This increased the possibility that the jury was not unanimous with respect to the specific type of statutorily prohibited conduct that occurred.

Because the second and third counts potentially were premised on the violation of alternative portions of the risk of injury statute, these counts are encompassed by the rule in *Benite* because there was a risk that the jurors were not unanimous with respect to the alternative bases of criminal liability. Contrary to the arguments that he advanced before the trial court, the defendant argues before this court that the *Famiglietti* test does not apply in the present situation because "[he] was not charged with alternative acts but, rather, with . . . committing the same criminal act at different times and in distinct scenarios." For the reasons we previously have discussed, the defendant's argument in this regard is not persuasive. In counts two and three, the defendant was charged with having committed alternative types of criminal acts, and it is of no consequence to our analysis of the issue of unanimity that the state charged him with having engaged in these acts at different times and in distinct scenarios.

Relying on the portions of the court's charge set forth

previously in this claim, we observe that our careful review of the court's charge reflects a complete absence of language sanctioning a nonunanimous verdict, thus compelling a conclusion that the defendant cannot prevail in demonstrating that a specific unanimity instruction was required.[28] See, e.g., *State* v. *Senquiz*, 68 Conn. App. 571, 589, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002); *State* v. *Cramer*, 57 Conn. App. 452, 461, 749 A.2d 60, cert. denied, 253 Conn. 924, 754 A.2d 797 (2000). As we have stated previously, the court, in its general instructions, charged the jury in relevant part: "You must consider each count separately and return a separate verdict for each count. . . . Remember that *your verdict as to each count must be unanimous*; all six jurors must agree as to the verdict as to each separate count." (Emphasis added.) See footnote 16 of this opinion. With respect to the risk of injury count, the court instructed the jury in relevant part: "In order to convict the defendant on this count *you must be unanimous that at least one violation of this statute occurred* between the defendant and [the victim] during the time frame indicated." (Emphasis added.) See footnote 17 of this opinion. With respect to the conspiracy count, the court instructed the jury in relevant part: "If you *unanimously find* that the state has proved beyond a reasonable doubt each of the elements of the crime of conspiracy to commit risk of injury to a child, then you shall find the defendant guilty." (Emphasis added.) See id. Thus, the court's instructions with respect to the risk of injury and conspiracy counts did not expressly sanction a nonunanimous verdict, and the court provided general unanimity instructions to the jury as well as unanimity instructions in the context of the instructions pertaining to the counts at issue. Even though the court did not provide a specific unanimity instruction with respect to the statutory alternatives that were possible in the jury's evaluation of counts two and three, we decline to interpret the instruction provided as implicitly sanctioning a nonunanimous verdict. As our Supreme Court explained in *State* v. *Dyson*, supra, 238 Conn. 793, it is not appropriate for a reviewing court to conclude that a charge implicitly sanctioned a nonunanimous verdict; a trial court's "silence" with respect to the need for unanimity regarding statutory alternatives is not the equivalent of an instruction that expressly sanctions a nonunanimous verdict. Id.

Thus, despite the fact that the information was duplicitous with respect to counts two and three, the defendant is unable to demonstrate that a specific unanimity instruction was required. See, e.g., *State* v. *Famiglietti*, supra, 219 Conn. 619–20. Accordingly, the defendant has failed to demonstrate that the risk of a nonunanimous verdict existed and, thus, that he is entitled to relief with respect to the court's denial of his motion for a bill of particulars or his request that a specific unanimity instruction be given to the jury.

## II

Next, the defendant claims that the court improperly denied his motion to preclude evidence that he had been engaged in a sexual relationship with his coconspirator, T. We disagree.

The following additional facts are relevant to this claim. Prior to trial, the defendant filed a motion in limine in which he asked the court to prohibit the state from presenting testimony from T. "regarding his claimed past sexual involvement with the defendant." The motion stated: "The state has indicated that, during interviews with [T], he has revealed information regarding claims of his own sexual involvement with the defendant dating back to a time when they were seven or eight years old. The defendant and [T] were born two days apart." In the motion, the defendant objected to the evidence on the ground that it was unduly prejudicial, it was "irrelevant and immaterial to the allegations of sexual assault or conspiracy alleged to have occurred when the defendant and [T] were between the ages of fifteen and nineteen" and that it "improperly places the defendant's character in evidence."

During oral argument with respect to the motion in limine, the prosecutor represented that, during the prior trial, which resulted in a mistrial, the court had permitted the state to ask T only whether "the defendant and [T] had had an ongoing sexual relationship from the ages of seven or eight that continued up until their teen years." The prosecutor argued that she sought similar leeway in her examination of T during the present trial because, pursuant to §§ 4-1 through 4-3 of the Connecticut Code of Evidence, the evidence of an intimate sexual relationship was relevant to the issues before the jury.

The prosecutor explained that the state would present evidence that, during one of the specific incidents of abuse, T given "a look" to the defendant before T and the defendant began to sexually assault the victim. The prosecutor argued that this evidence was relevant to proving that a conspiracy existed, "but the fact [that] these two gentlemen had an already existing sexual relationship amongst themselves clearly makes the fact of the conspiracy more probable, the fact [that] they had engaged in sexual relations themselves. Clearly, that particular relationship is probative of the conspiracy.

"And while the state agrees . . . there's prejudice to the defendant in that it is an embarrassing, perhaps, thing to them, or some jurors might find that it's something that they perhaps would not engage in, the probative value . . . based on the fact [that] we have charged conspiracy, based on the fact [that] conspiracy is a charge which generally is proven by evidence such as this, the relationship of the two parties as opposed

to written agreement, it's clearly probative. And that probative value outweighs the prejudicial effect. . . .

"[I]t's the state's position . . . [that] this is not uncharged misconduct. There's no violation of the law here. So, we are proceeding under just a relevancy argument and probative value outweighing prejudicial effect."

Defense counsel responded that the evidence at issue was not relevant for purposes of proving that a conspiracy existed. Defense counsel argued that, essentially, the state was attempting to introduce the evidence for the improper purpose of demonstrating the defendant's propensity to engage in the conduct with which he was charged. Moreover, defense counsel argued that the probative value of the evidence, if any, was outweighed by the prejudice it would likely cause the defendant. Defense counsel stated in relevant part: "It's not misconduct when they reach a certain age and it's consensual between them, if, in fact, it occurred. It does not show a propensity to engage in aberrant and compulsive sexual misconduct. And certainly children who are under the age . . . of fifteen years old cannot be charged with a crime for this kind of sexual conduct or misconduct, however it's classified. . . .

"[T]his wasn't criminal conduct. If there were certain other allegations, it may have been considered delinquency conduct. But there's no bad act here. This is something that, if it's testified to, becomes public. We seek to protect children from behaviors that are repugnant in society, whether they be the perpetrator or the victim. And I would argue the public policy behind the juvenile laws that [seeks] to protect any kind of identification of children under the age of fifteen who engage in sexual behavior. It is not part of our . . . civilized society where that would be acceptable to anybody. It's repugnant information. It's private information. . . .

"We recognize that children do not have the capacity to understand the right and wrong of that type of behavior. Certainly, seven and eight year olds, which is what the state is seeking to get in, up through the teenage years, where, at a certain age then, under our law, it becomes consensual behavior. However . . . many people in our society still hold to the belief that same sex relationships are also repugnant. Certainly, the behavior that they are alleging when they were young children should not be revealed, should not be allowed, whether it's true or not . . . . It has nothing to do with conspiracy." Defense counsel then argued that the evidence tended to malign the defendant's character and was inadmissible under § 4-4 of the Connecticut Code of Evidence,[29] and that the evidence was not relevant to proving motive, intent, or identity.

The prosecutor responded to the arguments of

defense counsel by reiterating that the state did not seek to present the evidence to show the defendant's propensity to engage in aberrant sexual behavior with children. Instead, the prosecutor argued, the state sought to introduce the evidence for the purpose of demonstrating that there was an agreement between the defendant and T, which was highly relevant to demonstrating that the state had proven its conspiracy charge. The prosecutor proposed that the court could deliver a limiting instruction in this regard. Finally, the prosecutor expressed her belief that the evidence was not as prejudicial as defense counsel believed it to be in light of current societal norms.

The court stated that it did not believe that it was appropriate to view the evidence as misconduct evidence, for "a relationship between two consenting individuals at one time seven or eight years old and, later, at the outside, fifteen years old, sixteen years old or a little older, [was not] something of such a shocking nature that it should be analyzed according to the misconduct [case law]." The court stated that the sexual relationship between the defendant and T was relevant for two reasons. First, "it goes to the credibility of [T], that is . . . [it] could be argued that [T] had a lack of motive to falsify [his testimony] and a lack of animus toward the defendant. So, that relationship, which is of an intimate and positive nature, I think goes to the credibility of [T]." Second, the court found that the evidence was relevant to explaining the circumstances in which the defendant and T engaged in sexual abuse of the victim. The court explained: "[T]he jury is going to wonder how, out of the blue, the defendant and [T] would have started to engage in this type of conduct with [the victim]. And . . . the fact that the defendant and [T] had previously engaged in some type of sexual relationship prior to this event that occurred with [the victim], it makes much more sense to the trier of fact that there is an ongoing or, had been, an ongoing sexual relationship between the defendant and [T] and that [the victim] was somehow drawn into that. So, I think that fact is very relevant. I think it's extremely relevant."

The court stated that it was not persuaded by the arguments advanced by defense counsel that the evidence was unduly prejudicial. The court stated that "the fact that they were seven or eight when they started this and fifteen or sixteen when it ended, I think that actually makes the nature of that relationship even less prejudicial. . . . [I]t's not outrageous, it's not shocking . . . and it is consensual."

The court denied the motion in limine, stating that it would permit the state to engage in a very limited inquiry with respect to this issue during its direct examination of T but would permit further inquiry if it was warranted by the questions asked, if any, during cross-examination. The court stated that a limited inquiry that

did not explore any details of the relationship "balances and filters out any undue prejudice."

During the state's direct examination of T, the following colloquy between the prosecutor and T occurred:

"Q. Now, you know, we just talked a minute ago about sort of fun things you and the defendant would do as boys—playing baseball, hanging out—but isn't it true that in addition to that, that for a number of years, from the time that you were really small, you and the defendant had an ongoing sexual relationship as well?

"A. Correct."

Shortly thereafter, while T was testifying with respect to the first time that he and the defendant abused the victim while in T's bedroom, the following colloquy between the prosecutor and T occurred:

"Q. And at this point in your life, as you said before, you and the defendant had, since you were younger, been engaging in sexual activity between the two of you?

"A. Correct."

The prosecutor did not conduct a further inquiry with respect to the sexual relationship that existed between the defendant and T. Prior to T's direct examination, the court asked if defense counsel sought a limiting instruction related to the evidence at issue. Defense counsel stated that she would decide later that day. Later that day, prior to T's cross-examination, the court, in the absence of the jury, noted that it had conferred with counsel concerning a potential limiting instruction regarding the proper use of the evidence at issue, and that defense counsel had "indicated that they would prefer an instruction at the end or that they will decide by the end of the case as opposed to [the court delivering] one right now." During a charge conference several days later, defense counsel stated that she had reviewed a proposed limiting instruction that was drafted by the court but that her preference was that the court not deliver the instruction because it would "highlight" the evidence at issue. The court stated that it would delete the proposed limiting instruction from its draft jury charge and made clear that it would consider alternative language. The court stated, "[i]f there is any other instruction that you're requesting, please let me know . . . ." Thereafter, no request for a limiting instruction was made, the court did not deliver a limiting instruction in its charge, and the defendant did not take an exception on that ground.

The defendant's arguments on appeal, which were adequately preserved at trial, are slightly narrower than those that he raised before the trial court. He argues that the court erroneously determined that the evidence had any probative value with respect to the conspiracy charge. He argues: "[T]here is simply no basis in Con-

necticut or federal case law that supports the proposition that two people in a sexual relationship are more likely to engage in a conspiracy to commit risk of injury to a [child] as a result of that relationship." The defendant argues that the evidence did not provide a *motive* for the defendant and T to engage in sexual abuse of the victim. Additionally, the defendant argues that because T testified that his relationship with the defendant came to an end after he agreed to cooperate with the police in the present case, to the defendant's detriment, the evidence was not relevant to demonstrate that T may have had any lingering affection for the defendant and, thus, may have lacked the motive to testify untruthfully. The defendant urges us to conclude that "there remains a significant cultural taboo concerning sexual relationships with first cousins" and that the notion of first cousins marrying or having children is not socially acceptable but is "disturbing or even repulsive."[30]

We begin our analysis of the claim by observing that there is no claim that the court misinterpreted a rule of evidence but, rather, that the court abused its discretion in applying relevant rules of evidence. It is well settled that "[t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Anwar S.*, 141 Conn. App. 355, 374–75, 61 A.3d 1129, cert. denied, 308 Conn. 936, 66 A.3d 499 (2013).

First, we address the defendant's argument that the court improperly determined that the evidence at issue was relevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. Unless there is a basis in law to exclude relevant evidence, it is admissible. See Conn. Code Evid. § 4-2. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue . . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . The trial court has wide discretion to determine the relevancy

of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . [A]buse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . .

"Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . Furthermore, [t]he fact that the [trier of fact] would have . . . to rely on inferences to make [a] determination does not preclude the admission of . . . evidence. . . . The trial court [however] properly could [exclude] evidence where the connection between the inference and the fact sought to be established was so tenuous as to require the [trier of fact] to engage in sheer speculation. . . . Because the law furnishes no precise or universal test of relevancy, the question must be determined on a case by case basis according to the teachings of reason and judicial experience. . . .

"[P]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts." (Citations omitted; internal quotation marks omitted.) *State* v. *Halili*, 175 Conn. App. 838, 862–64, 168 A.3d 565, cert. denied, 327 Conn. 961, 172 A.3d 1261 (2017).

We agree with the trial court that the evidence at issue was relevant to one or more issues before the jury with respect to the conspiracy charge. "[C]onspiracy is a specific intent crime, with the intent divided into two elements: [1] the intent to agree or conspire and [2] the intent to commit the offense which is the object of the conspiracy. . . . Thus, [p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pond*, 315 Conn. 451, 460, 108 A.3d 1083 (2015). "The existence of a formal agreement between the parties, however, need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Because

of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. . . . Consequently, it is not necessary to establish that the defendant and his coconspirators signed papers, shook hands, or uttered the words we have an agreement. . . . Indeed, a conspiracy can be inferred from the conduct of the accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Elijah*, 42 Conn. App. 687, 695–96, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996).

Here, the state bore the burden of demonstrating beyond a reasonable doubt that the defendant conspired with another person, T, to engage in the crime of risk of injury to a child. The nature of the relationship between the defendant and T was highly relevant to proving that a conspiracy existed because it was probative circumstantial evidence that made it more likely that the defendant specifically intended to conspire with T to engage in conduct constituting the crime of risk of injury to a child and whether, when the defendant and T participated in sexual activities with the victim, such conduct was an overt act in furtherance of the conspiracy. We are persuaded that the court reasonably determined that the evidence helped to provide an explanation of how the victim was "drawn into" the existing sexual relationship because it would have been reasonable for the jury to infer that the lengthy *sexual* relationship made it more likely that the defendant and T would have discussed matters of a sexual nature with each other and that they had agreed to engage in sexual activities not only with one another, but with a third person.

As we have explained, circumstantial evidence to prove a fact, such as the conspiracy at issue, is relevant if it tends to support a relevant fact even to a slight degree. Such evidence need not be conclusive proof of the fact for which it is offered or susceptible to just one reasonable interpretation. Viewed in the context of the unique factual issues that existed in the present case, the existence of a long-term sexual relationship tended to reflect that the defendant and T had trust and confidence in each other and, thus, made it more likely than it would have been in the absence of the evidence at issue that they would feel more comfortable agreeing to commit a crime of a sexual or forbidden nature. The evidence also shed light on the meaning of the "look" that was shared between the defendant and T immediately before they first sexually abused the victim together. It made it more likely that the "look" was evidence that T and the defendant, who were sexual partners, had agreed to commit sexual abuse against the victim and were engaging in conduct in furtherance of the conspiracy.

According to the state's proffer, the sexual aspect of the relationship between the defendant and T was not

fleeting, but had lasted for years prior to the time at which the defendant and T sexually abused the victim. Beyond the evidence of the familial relationship, the evidence of the sexual aspect of their relationship was highly relevant to an evaluation of whether they would have been likely to have trusted one another to conspire to commit a crime of a sexual nature against a child. As the court aptly observed, it would have been logical for the jury to have questioned the circumstances under which the defendant and T had agreed to conspire to commit the crime at issue. The evidence that the defendant and T had been engaged in a lengthy sexual relationship was probative circumstantial evidence in this regard.

We briefly address the defendant's argument that the prior sexual relationship between the defendant and T "did not provide a *motive* that would explain why the defendant and [T] would have entered into an agreement to sexually assault [the victim]." (Emphasis added.) The court never stated that the evidence was relevant to motive to enter into the conspiracy. Instead, the evidence was relevant because it made the existence of a conspiracy more likely than it would be without the evidence. Neither the prosecutor nor the trial court suggested, and we certainly do not suggest, that evidence that the defendant and T were in a long-term sexual relationship was a basis on which to infer that they were motivated to engage in sexual conduct with children. Like the trial court, we merely conclude, for the reasons already explained, that the sexual relationship tended to make the existence of a conspiracy more likely than it would be without the evidence.

Similarly, we agree with the court that the evidence of the lengthy sexual relationship was relevant to the jury's assessment of T's credibility. Evidence of such a relationship reasonably suggested that, at some point in time, T had a romantic or an emotional bond with the defendant. It can hardly be disputed that if the historical relationship between the defendant and T was distant or merely familial, it would not have produced the type of emotional bond that logically could be inferred from a sexual relationship. The existence of an emotional bond or strong feelings, in turn, was relevant to an assessment of whether T lacked a motive to testify unfavorably against the defendant.

The defendant urges us to consider as dispositive the fact that, during the state's direct examination of T at trial, T testified that, after he provided a statement to the police in which he implicated the defendant in the crimes, his relationship with the defendant came to an end.[31] The defendant argues that this testimony undermined the court's belief that the evidence of a sexual relationship bolstered a finding that T lacked a motive to testify falsely. This argument is not persuasive because the jury could have discredited T's testimony

in this regard and found the evidence of the long-term sexual relationship that existed between the defendant and T to be more probative circumstantial evidence with respect to the affection, if any, that T felt for the defendant. Setting that rationale aside, however, the flaw in the defendant's argument is that we must evaluate the court's ruling to admit the evidence at the time that the ruling was made, not in light of evidence that was presented at a later time. See, e.g., *State* v. *Harris*, 32 Conn. App. 476, 481 n.4, 629 A.2d 1166 ("[w]e are bound to evaluate the propriety of the trial court's rulings on the basis of the facts known to the court at the time of its rulings"), cert. denied, 227 Conn. 928, 632 A.2d 706 (1993).

Having concluded that the evidence of a conspiracy was relevant, we address the defendant's remaining argument that the court abused its discretion by failing to conclude that the evidence should not be admitted because it was unduly prejudicial. "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . ." Conn. Code Evid. § 4-3. As this court frequently has observed, "[a]ll evidence adverse to a party is, to some [degree, prejudicial]. To be excluded, the evidence must create prejudice that is undue and so great as to threaten injustice if the evidence were to be admitted." (Internal quotation marks omitted.) *State* v. *Bullock*, 155 Conn. App. 1, 40, 107 A.3d 503, cert. denied, 316 Conn. 906, 111 A.3d 882 (2015).

"The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jur[ors]. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . .

"Our Supreme Court has identified four factors relevant to determining whether the admission of otherwise probative evidence is unduly prejudicial. These are: (1) where the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Citation omitted; internal quotation marks omitted.) *State* v. *Urbanowski*, 163 Conn. App. 377, 404, 136 A.3d 236 (2016), aff'd, 327 Conn. 169, 172 A.3d 201 (2017).

The defendant's arguments are limited to the risk that the evidence at issue aroused in the jurors negative emotions or hostility that was prejudicial to him. The evidence related to the existence of a sexual relationship between first cousins of the same age that began

when they were "really small" or "younger." The evidence was not introduced as or characterized as prior misconduct or propensity evidence on the part of the defendant relative to the sexual abuse of a much younger, nonconsenting child, nor was it of a violent or sexually graphic nature.

The court carefully considered the risk of prejudice to the defendant and took steps to minimize the risk of prejudice by limiting the testimony in the manner that it did. The court expressed its readiness to provide the jury with a limiting instruction with respect to the evidence but the defendant requested that it not be delivered to the jury. Even in the absence of such an instruction, we are not persuaded that the generalized description of when the sexual relationship began was likely to have aroused the emotions of the jurors, for the general details provided in the evidence reasonably may have led the jurors to infer that the relationship began as sexual exploration between young children. Although the sexual relationship that continued beyond childhood was not characterized by anyone at trial as being akin to incest,[32] we recognize that the fact that it existed between first cousins had the potential to arouse negative emotions in the jurors. However, we are not persuaded that this potential was so significant that it outweighed the probative value of the evidence. Also, we are mindful that the jury was presented with a great deal of graphic evidence that the defendant and T had engaged in a variety of sexual activities with the victim, who was a child at the time that the events in question occurred. The fact that this other graphic evidence was before the jury undermines the possibility that the extremely limited evidence of the sexual relationship between the defendant and T unduly aroused the jurors' emotions.

For the foregoing reasons, we conclude that the court's admission of the evidence at issue did not reflect an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54–86e.

[1] The court imposed a total effective sentence of twenty years of incarceration, execution suspended after ten years, followed by ten years of probation with special conditions, including lifetime inclusion on the state's sex offender registry. For the offense of sexual assault in the first degree, the court imposed a sentence of twenty years of incarceration, execution suspended after ten years, followed by ten years of probation with special conditions, including lifetime inclusion on the state's sex offender registry. For the offense of risk of injury to a child, the court imposed a sentence of five years of incarceration. For the offense of conspiracy to commit risk of injury to a child, the court imposed a sentence of five years of incarceration. All three sentences were to run concurrent to each other.

[2] Prior to the trial, T entered into a written plea agreement with the state in which he agreed to cooperate fully and truthfully with respect to the investigation and charges brought against the defendant. In exchange for

T's cooperation and testimony at the defendant's trial, the state agreed to limit the charges against T to risk of injury to a child in violation of § 53-21 (a) (1) and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A). The state also agreed that, following T's guilty plea, it would recommend to the sentencing court that he receive a total effective sentence of five years of incarceration, execution suspended after eighteen months, followed by five years of probation, including sex offender registration.

[3] As we discuss in this opinion, the victim testified concerning three distinct incidents of abuse at the hands of the defendant. T testified with respect to a fourth distinct incident. The victim also testified that, beyond the incidents he described, many other incidents of sexual abuse involving the defendant and T had "blurred together because there [were] too many to count and distinguish between." These incidents, which always occurred at the home of the victim's father, involved the touching of intimate parts, oral sex, and anal sex. The victim recalled that the defendant and T abused him simultaneously and would frequently take turns or "trade off" in terms of the sexual acts that they committed against him.

[4] Both the victim and T testified about this incident of abuse. The victim testified that the defendant initiated the abuse. T, however, testified that he had initiated the abuse. T testified in relevant part: "Me and the defendant looked at each other, and I believe I started touching [the victim's] butt at that point." With respect to the "look" that he and the defendant shared just prior to their abuse of the victim, T explained, "I don't know how to describe it. It's just like you can't describe a look that a mom would give to a daughter to let you know that there's trouble. . . . It's a look."

[5] The victim did not refer to this incident during his testimony. T, however, described this incident during his testimony.

[6] The victim testified that he did not tell anyone about the sexual abuse he endured until he contacted The Trevor Project when he was thirteen years of age. The victim's mother, however, testified that when the victim was "a baby," perhaps three years of age, he told one of his two older sisters that T had touched his private parts. The victim's mother testified that the victim's father promptly addressed the matter at that time by having a conversation with the victim. Following the conversation, the victim's father told her that everything was "fine." The victim's mother testified that she had no reason to suspect or even imagine that T had touched the victim in a sexual manner, and she believed that the victim's complaint was the result of "how boys can play around with each other." Accordingly, the victim's mother did not take any further action.

[7] The defendant has not set forth an independent analysis of the present claim under our state constitution. Thus, our analysis is limited to the rights afforded under the federal constitution. The sixth amendment to the United States constitution, made applicable to the states by the fourteenth amendment, guaranteed the defendant, who was tried by a jury comprised of six members, the right to a unanimous verdict. See *Burch* v. *Louisiana*, 441 U.S. 130, 131–34, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979) ("conviction by a nonunanimous [six member] jury in a state criminal trial for a nonpetty offense deprives an accused of his constitutional right to trial by jury").

[8] The prior trial ended in a mistrial after the jury was unable to reach a unanimous verdict.

[9] In count one, the substitute information of November 2, 2015, stated: "That the said [defendant] did commit the crime of sexual assault in the first degree in violation of [§] 53a-70 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant] did engage in sexual intercourse (fellatio) with another person [the victim], and such other person was under thirteen years of age and [the defendant] was more than two years older than such person."

Count two provided: "That the said [defendant] did commit the crime of sexual assault in the first degree in violation of [§] 53a-70 (a) (2) on a date between December 26, 2009, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant] did engage in sexual intercourse (anal intercourse) with another person [the victim], and such other person was under thirteen years of age and [the defendant] was more than two years older than such person."

Count three provided: "That the said [defendant] did commit the crime of risk of injury to a child in violation of [§] 53-21 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant] did have

contact with the intimate parts of a child under the age of sixteen years [the victim], and subjected a child under sixteen years of age [the victim] to contact with [the defendant's] intimate parts, in a sexual and indecent manner likely to impair the health and morals of such child."

Count four provided: "That the said [defendant] did commit the crime of conspiracy to commit risk of injury to a child in violation of [§§] 53a-48 (a) and 53-21 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant], with intent that conduct constituting the crime of risk of injury to a child be performed, did agree with one or more persons, namely, [T], to engage in and cause the performance of such conduct, and any one of them committed an overt act in pursuance of such conspiracy."

[10] "The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise. . . . A bill of particulars limits the state to proving that the defendant has committed the offense in substantially the manner described." (Citation omitted; internal quotation marks omitted.) *State* v. *Steve*, 208 Conn. 38, 44, 544 A.2d 1179 (1988).

[11] The motion for a bill of particulars stated in relevant part: "In order to properly prepare a defense, the defendant, by his attorney, moves that the state of Connecticut make more particular its charges by stating:

"(1) The specific nature of the offense or offenses which the defendant is charged with.

"(2) The time, place and manner in which this offense was committed.

"(3) The specific acts performed by the defendant which constitute all necessary elements of the crime charged.

"(4) The general circumstances surrounding the alleged crime.

"(5) State with particularity, the date, time of said alleged violation and the section of the Connecticut General Statutes violated.

"(6) State with particularity, the name or names, including addresses, of all persons the state alleges were involved in said violations."

[12] In count one, the substitute information of September 2, 2016, provided in relevant part: "That the said [defendant] did commit the crime of sexual assault in the first degree in violation of [§] 53a-70 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant] did engage in sexual intercourse (fellatio and anal intercourse) with another person [the victim], and such other person was under thirteen years of age and [the defendant] was more than two years older than such person."

Count two provided: "That the said [defendant] did commit the crime of risk of injury to a child in violation of [§] 53-21 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant] did have contact with the intimate parts of a child under the age of sixteen years [the victim], and subjected a child under the age of sixteen years of age [the victim] to contact with [the defendant's] intimate parts, in a sexual and indecent manner likely to impair the health and morals of such child."

Count three provided: "That the said [defendant] did commit the crime of conspiracy to commit risk of injury to a child in violation of [§§] 53a-48 (a) and 53-21 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant], with intent that conduct constituting the crime of risk of injury to a child be performed, did agree with one or more persons, namely, [T], to engage in and cause the performance of such conduct, and any one of them committed an overt act in pursuance of such conspiracy."

[13] In *Saraceno*, the court stated that the policy considerations underlying the doctrine against duplicitous charges "include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." (Internal quotation marks omitted.) *State* v. *Saraceno*, supra, 15 Conn. App. 229.

[14] The requested instruction provided in relevant part: "The state has alleged that the defendant . . . has committed the offense of sexual assault in the first degree. The state alleges in the first count the act of sexual assault in the first degree by way of fellatio and anal intercourse.

"You may find the defendant guilty of the offense of sexual assault in the first degree only if you all unanimously agree on the manner in which the

state alleges the defendant committed the offense and that it occurred during the time and place alleged by the state.

"This means you may not find the defendant guilty on the first count of sexual assault in the first degree unless you all agree that the state has proved beyond a reasonable doubt that the [defendant] did engage in sexual intercourse by fellatio and anal intercourse with [the victim] and [the victim] was under [thirteen] years of age and [the defendant] was more than [two] years older than [the victim]. The state alleges these crimes were committed between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father]. If the state has not met its burden of proving sexual assault in the first degree by way of fellatio and anal intercourse at said time and place, you must return a verdict of not guilty. As I have instructed you, when you reach a verdict, it must be unanimous on all elements of the offense."

[15] The court referred to *United States* v. *Schiff*, 801 F.2d 108 (2d Cir. 1986), cert. denied, 480 U.S. 945, 107 S. Ct. 1603, 94 L. Ed. 2d 789 (1987); *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977); *State* v. *Dyson*, 238 Conn. 784, 680 A.2d 1306 (1996); *State* v. *Tucker*, 226 Conn. 618, 629 A.2d 1067 (1993); *State* v. *Famiglietti*, supra, 219 Conn. 605; *State* v. *Jennings*, 216 Conn. 647, 583 A.2d 915 (1990); *State* v. *James*, 211 Conn. 555, 560 A.2d 426 (1989); *State* v. *Bailey*, 209 Conn. 322, 551 A.2d 1206 (1988); *State* v. *Mancinone*, 15 Conn. App. 251, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989); and *State* v. *Flynn*, 14 Conn. App. 10, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988).

[16] The court stated: "The defendant is charged with three counts in the information. The defendant is entitled to and must be given by you a separate and independent determination of whether he is guilty or not guilty as to each of the counts. Each of the counts charged is a separate crime. The state is required to prove each element in each count beyond a reasonable doubt. Each count must be deliberated upon [by] you separately. The total number of counts charged does not add to the strength of the state's case.

"You may find that some evidence applies to more than one count. The evidence, however, must be considered separately as to each element in each count. Each count is a separate entity.

"You must consider each count separately and return a separate verdict for each count. This means that you may reach opposite verdicts on different counts. A decision on one count does not bind your decision on another count. Remember that your verdict as to each count must be unanimous; all six jurors must agree as to the verdict as to each separate count."

[17] During its instructions with respect to the sexual assault count, the court instructed the jury that the first element of the offense was that "the defendant engaged in sexual intercourse with the [victim]. In this count, sexual intercourse means fellatio or anal intercourse." The court also stated: "In order to convict the defendant on this count, you must be unanimous that at least one violation of this statute by one of the methods alleged occurred between the defendant and [the victim] during the time frame indicated.

"You will note that each count in the information contains within it the alleged time, date and location of the offense. The state does not have to prove the exact time, date or location of the offense beyond a reasonable doubt. However, the state must prove each element of each offense, including identification of the defendant, beyond a reasonable doubt.

"If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of sexual assault in the first degree, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall then find the defendant not guilty."

During the court's instruction with respect to the second count, which alleged risk of injury to a child, the court stated in relevant part that the state bore the burden of proving the essential element of contact with intimate parts. The court stated that this required proof beyond a reasonable doubt "that the defendant had contact with the intimate parts of the minor or subjected the minor to contact with the defendant's intimate parts . . . ."

With respect to the risk of injury charge, the court also stated in relevant part: "In order to convict the defendant on this count, you must be unanimous that at least one violation of this statute occurred between the defendant and [the victim] during the time frame indicated. The state does not have to prove the exact time, date or location of the offense beyond a reasonable doubt. However, the state must prove each element of each offense, including

identification of the defendant, beyond a reasonable doubt.

"If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of risk of injury to a [child], then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall then find the defendant not guilty."

During its instruction with respect to the charge of conspiracy to commit risk of injury to a child, the court instructed the jury in relevant part that the state bore the burden of proving beyond a reasonable doubt that (1) "there was an agreement between the defendant and one or more persons to engage in conduct constituting the crime of risk of injury to a child, which conspiracy the defendant specifically intended to join"; (2) "there was an overt act in furtherance of the subject of the agreement by any of those persons"; and (3) "the defendant specifically intended to commit the crime of risk of injury to a child."

Later, in the context of its instructions concerning conspiracy to commit risk of injury to a child, the court stated: "The state does not have to prove the exact time, date or location of the offense beyond a reasonable doubt. However, the state must prove each element of each offense, including identification of the defendant, beyond a reasonable doubt.

"If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of conspiracy to commit risk of injury to a child, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall then find the defendant not guilty."

[18] See footnote 12 of this opinion.

[19] In *Saraceno*, the defendant was convicted of three counts of sexual assault in the second degree and two counts of risk of injury to a child. *State* v. *Saraceno*, supra, 15 Conn. App. 224.

[20] In *Marcelino S.*, the defendant was convicted of risk of injury to a child and sexual assault in the fourth degree. *State* v. *Marcelino S.*, supra, 118 Conn. App. 590–91.

In *Marcelino S.*, "[t]he state's long form information, dated December 17, 2007, stated in relevant part: In the Superior Court of Connecticut, judicial district of New Haven . . . [the assistant state's attorney] accuses the defendant . . . of risk of injury to a minor, and charges that on divers dates, between August, 2003, and April, 2005 . . . the defendant . . . had contact with the intimate parts of a child under the age of sixteen, to wit: a minor . . . child . . . in a sexual and indecent manner likely to impair the health and morals of such child, in violation of [subdivision] (2) of subsection (a) of section 53-21 of the Connecticut General Statutes. . . .

"[The assistant state's attorney] further accuses the defendant . . . of sexual assault in the fourth degree, and charges that on divers dates, between August, 2003, and April, 2005 . . . the defendant . . . intentionally subjected another person to sexual contact who was under fifteen years of age, to wit: a minor . . . child . . . in violation of [subparagraph] (A) of [subdivision] (1) of subsection (a) of section 53a-73a of the Connecticut General Statutes." (Emphasis omitted; internal quotation marks omitted.) Id., 593.

[21] In *Michael D.*, "[t]he state based each of its charges on three separate incidents of sexual misconduct allegedly occurring in 2001, 2002, and 2003. The state initially charged the defendant in a fifteen count information with several different charges, each of which was alleged to have been committed in the course of one of the three incidents identified therein by the year of its alleged occurrence. Prior to trial . . . the state filed a substitute information, consolidating the fifteen counts into the three counts on which he went to trial.

"In the first count of the substitute information, the state charged the defendant with sexual assault in the first degree. In the second count of the substitute information, the state charged the defendant with risk of injury to a child, and alleged that 'on . . . diverse dates from 2001–2003 . . . the [defendant] had contact with the intimate parts, as defined in [General Statutes §] 53a-65, of a child under the age of sixteen years or subjected a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, said conduct being in violation of section 53-21 (2) of the Connecticut General Statutes.'

"In the third count, the state charged the defendant with risk of injury to a child, and alleged that 'on . . . diverse dates from 2001–2003 . . . the [defendant] did wilfully or unlawfully cause or permit a child under the age of sixteen years to be placed in such a situation that its life or limb was

endangered, or its health was likely to be injured, or its morals likely to be impaired, or did an act likely to impair the health or morals of such child, such conduct being in violation of section 53-21 (1) of the Connecticut General Statutes.' " *State* v. *Michael D.*, supra, 153 Conn. App. 321–22.

[22] In *Michael D.*, this court, citing *State* v. *Benite*, 6 Conn. App. 667, 674, 507 A.2d 478 (1986), observed that "[t]he unanimity requirement mandates that the jury agree on the factual basis of the charge." *State* v. *Michael D.*, supra, 153 Conn. App. 324. Because this court explicitly relied on *Benite* for this proposition, and mindful of the well settled interpretation of *Benite* and its progeny that we will discuss in detail in our analysis of the present claim, we construe this statement to mean that a jury must unanimously agree on *the statutorily prohibited conduct* in which a defendant engaged, not necessarily the specific manner in which a defendant engaged in the statutorily prohibited conduct. Stated otherwise, when a defendant is charged with committing an offense that may be proven by alternative types of statutorily prohibited conduct, the jury is required to agree unanimously only on the *type* of statutorily prohibited conduct that underlies a finding of guilt.

[23] As the defendant correctly observes, the court delivered the following instruction to the jury in the present case: "In deciding what the facts are, you must, of course, consider all the evidence. In doing so, you must decide which testimony to believe and which testimony not to believe. You may believe all, any part of, or none of any witness' testimony."

[24] See footnote 3 of this opinion.

[25] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[26] General Statutes § 53-21 provides in relevant part: "(a) Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ."

[27] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

[28] Accordingly, we need not consider whether the defendant can satisfy the remaining parts of the *Famiglietti* test, including whether he can demonstrate that the alternative acts prohibited by § 53-21 (a) (2), for which the state presented evidence, are conceptually distinct. See, e.g., *State* v. *Dyson*, supra, 238 Conn. 793 (discussing fact that General Statutes § 53a-8 (a) does not present conceptually distinct bases of liability); *State* v. *Smith*, 212 Conn. 593, 606–607, 563 A.2d 671 (1989) (same).

[29] Section 4-4 (a) of the Connecticut Code of Evidence provides in relevant part: "Evidence of a trait of character of a person is inadmissible for the purpose of proving that the person acted in conformity with the character trait on a particular occasion . . . ."

[30] The defendant supports his arguments in this regard by citing to a 2009 New York Times newspaper article that discussed societal views toward sexual relations involving first cousins. Setting aside any concern that the 2009 article on which the defendant relies may not apply to societal views of jurors empaneled in 2016, we observe that this article was not presented to the trial court and, thus, is not part of the grounds on which the defendant objected to the evidence at issue.

[31] The defendant refers us to the following colloquy between the prosecutor and T:

"Q. . . . Once you gave the additional information and cooperated [with the police with respect to the sexual abuse allegations of the victim], so to speak, and you told the police that the defendant had done what he did, did [the defendant] have any relationship with you after that? . . .

"A. No . . . there was nothing after that. We were done."

[32] General Statutes § 53a-191 (a) provides: "A person is guilty of incest when he marries a person whom he knows to be related to him within any of the degrees of kindred specified in [General Statutes §] 46b-21."

General Statutes § 46b-21 provides: "No person may marry such person's parent, grandparent, child, grandchild, sibling, parent's sibling, sibling's child, stepparent or stepchild. Any marriage within these degrees is void."

Although § 46b-21 was amended during the time frame within which the crimes at issue were alleged to have occurred, because that amendment is not relevant to the claims on appeal we refer to the current revision of § 46b-21.

_____